## ELY *vs.* SPOFFORD & TILESTON.

The defendants having a claim against the United States government, for the re-funding of duties erroneously collected of them, upon molasses and sugars imported by them, the plaintiff proposed to recover and cause any excess of duties so paid, to be refunded, upon his receiving for his services and ex-penses one half of the same, or, at the option of the claimants, a reasonable compensation to be afterwards agreed upon ; he agreeing to save the defendants harmless " from all costs and liabilities to costs," and to charge his commission only " on whatever sum or sums of money he might recover for them." The defendants, among others, agreeing to the plaintiff's proposal, they signed a stipulation to that effect, writing opposite to their signatures, however, the words " not to interfere with any other arrangement already made." The defendants had previously employed D. & O. to prosecute the same claim, who were then actually engaged in the business, and whose influence and exertions con-tributed largely to the result. The claim having been allowed, and a large sum of money refunded to the defendants : *Held*, that the plaintiff was not entitled to recover fifty per cent upon the amount refunded by the treasury, with interest and without deduction ; and that it was erroneous to charge the jury that, in fixing the defendants' liability, they were not to take into account the amount paid by the defendants to D. & O. who were previously employed to prosecute the claim.

THIS was an action to recover compensation by way of com-missions on duties refunded to the defendants, upon impor-tations of sugar and molasses. The complaint averred that the defendants had paid and were paying large sums of money, exacted under color of the tariff act of 1846, by the collector of the customs, for duties on sugar and molasses by weight and measure, and without allowance being made for leakage or drainage on the voyage of importation, or for weight of casks. That in October, 1848, the defendants retained the plaintiff to obtain a just decision by some competent tribunal of the United States of the right of the defendants to have an allow-ance made for the loss of weight by leakage and drainage, and for weight of casks, and to have refunded to them all excess of duties which had been illegally exacted from them, or which they might be required to pay within two years thereafter, and induced and requested the plaintiff to take the risk and bear all the expense of suits and proceedings to be adopted by him for the purpose, saving the defendants harmless therefrom ;

and, in consideration therefor, agreed to allow the plaintiff a commission of fifty per cent of the amount refunded. That the plaintiff caused proper forms of proceeding to be adopted for protesting against such exactions, and procured the questions of fact and law involved in said exactions to be prosecuted, proceeded in and argued in the proper courts of the United States, and saved the defendants harmless from all costs, &c. So that by reason of the plaintiff's services and expenditures, judgments were rendered that such exactions were illegal and ought to be refunded, whereby the defendants were allowed and refunded duties amounting to $30,000 and upwards, whereby the plaintiff was entitled to $15,000. That the defendants have not paid, &c. Judgment was demanded for $15,000, interest and costs. The complaint averred a second cause of action for work, labor and services generally, in procuring the refunding of duties. The answer denied any retainer of the plaintiff, except so far as was contained in a paper writing which the defendants, together with other merchants in the city of New York, at the request of the plaintiff, signed, and which was set forth as follows: "John Ely, of the city of New York, is in the belief that the undersigned, importers of foreign merchandise, have been overcharged by the collector of the customs, through an erroneous calculation of the amount of the duties payable under the tariff act of July 30th, 1846, and he proposes to recover and cause any excess of duties so paid to the government of the United States to be refunded.

We hereby severally authorize the said Ely to recover from the treasury of the United States any duties or excess which have been or may be illegally exacted of us by the collector or other government officer; and on whatever sum or sums of money he may recover for us, we severally agree to pay him the one half of the same, or, in case the undersigned should prefer, such reasonable compensation as shall be hereafter agreed upon, or shall be fixed by referees, to be mutually chosen for that purpose. It is expressly understood that we are not to be called on to pay any part of the expenses which may arise in prosecuting such claim or claims, the said Ely having no au-

thority to make us liable for the payment of any moneys in pursuing these claims, unless we may individually, each in his own name, and not for the other, give him such special authority.

The condition on which this power is granted, is that the said Ely will give his attention to the prosecution of our claims, and pursue the same with diligence. This power is confined to importations under the tariff act of July 30th, 1846, already made, and to such as may be made within two years from this date. *Not to interfere with any other arrangement already made.* New York, October 13th, 1848.

SPOFFORD, TILESTON & Co."

The answer averred that the plaintiff at the same time signed a paper, which he delivered to the defendants, and which formed a part of the agreement, whereby he bound himself to bring one or more suits to test the legality of the said exactions, &c. Denied specifially the allegations of the complaint that the plaintiff caused proper forms of protest to be adopted, or procured the questions of fact and law to be proceeded in, &c., or saved the defendants harmless from all costs, &c.; or that by reason of the plaintiff's services or expenditures judgments were rendered or duties refunded to the defendants. It also denied that the plaintiff was entitled to commissions, &c. as claimed. Averred failure of performance by the plaintiff of his part of the agreement. And that before the signing of said paper writings with the plaintiff, the defendants had employed Earl Douglass and Henry Ogden to prosecute the business of procuring a return to the defendants of the duties which had been illegally exacted from them under the act of 1846, on their importations of sugar and molasses; that in October, 1848, and long before, said Douglass and Ogden were prosecuting said business, of which the plaintiff had notice. The answer averred on information and belief that the plaintiff intended, under said agreement, to take proceedings to establish the principle that duties were properly chargeable only on the net cost of importations of sugar and molasses, and not on the invoice value; that if he commenced any suit it was for this pur-

pose only, and that he failed in establishing such principle ; that the moneys refunded to the defendants were so refunded in consequence of decisions not procured by the plaintiff, or at his expense, &c. ; and that the defendants in procuring such refunding had paid large sums of money, of which the plaintiff had notice. The defendants denied the second alleged cause of action specifically as averred. The reply denied the averments of new matter in the answer. The issues thus joined were tried before Mr. Justice MORRIS and a jury, September 15th, 1853. ·

The leading facts established at the trial were as follows : In 1848 the defendants and other importers claimed to be entitled to a return of duties exacted by collectors of customs, under instructions of the treasury department, on importations of sugar and molasses, on *deficiencies in weight and measure occasioned by drainage and leakage, during the voyage of importation,* and employed Earl Douglass and Henry Ogden to prosecute their claims before the treasury department, in congress, or at law, agreeing to give them, as compensation, one-third of the amounts recovered. The contract with Douglass and Ogden was signed by the defendants and 181 other firms, in February, 1848. Douglass and Ogden entered on the performance of this contract, employed George Evans, Edward Curtis and others, and on behalf of the defendants and others, made a direct application for return of the duties in question to the treasury department—Mr. Walker being then secretary of the treasury—upon claims of Jonathan Thompson and Joseph Foulke. These claims were before the department in March, 1849, and were referred by Secretary Walker to the comptroller of the treasury for examination and report ; he reported in favor of the claimants, on the 16th of April, 1849, after Mr. Meredith had become secretary of the treasury. Mr. Meredith approved the report of the comptroller, May 1, 1849, and decided in favor of refunding the duties. In October, 1848, the plaintiff solicited the defendants to sign a paper authorizing him to recover from the treasury of the United States any duties, or excess of duties, which had been illegally exacted of them by the collector, and agreeing to pay him one half

Ely *v.* Spofford.

of whatever sums he might recover for them, &c.; he putting them to no expense. The defendants objected to signing, on the ground of having signed a previous contract to other parties; the plaintiff said "he must have the *name of the house*, as it was one of the largest houses engaged in importing sugar and molasses, whether he was paid or not." The defendants agreed to, and did, sign, with the reservation, "*not to interfere with any other arrangement previously made.*" Simultaneously with the above contract, the plaintiff signed a writing, obligating himself to bring one or more suits to test the legality of the exactions of the treasury department, and to save the defendants harmless from expense, &c. A suit was commenced in the United States circuit court at Baltimore, in November term, 1848, by F. W. Brune and others against Wm. H. Marriott, collector of the port of Baltimore, to recover duties on deficiencies of importations of sugar and molasses. This suit was prosecuted by F. W. Brune & Sons, and at their cost and risk. The plaintiff offered to prosecute the suit, which was declined. But he assisted in preparing evidence, &c., and by agreement with Brune was to be regarded as having "instituted" it, and was to have the advantage of it in his business. The Brune suit was decided in favor of the Brunes, by Ch. J. Taney, April 30, 1849. This decision was contemporaneous with the action of Secretary Meredith approving the report of the comptroller of the treasury; but said report and the approval thereof were independent of that decision and of any proceedings of the plaintiff. Mr. Meredith, on the 13th of May, 1849, after approving said comptroller's report, and after the decision of *Brune* v. *Marriott*, revoked his decision of May 4, 1849, in favor of the importers, and decided against allowing the claims. This action was wholly independent of the suit of Brune, and of any proceeding of the plaintiff. The plaintiff made numerous applications to the secretary of the treasury, after the decision of *Brune* v. *Marriott*, to induce him to allow claims for duties, &c. "in conformity with the decision of the court in that case;" all of which were unsuccessful. The secretary of

the treasury refused to acquiesce in that decision, or adopt it as the rule of construction of the department, on the ground that it did not present all the facts necessary for the decision of the principle involved in the claims of the importers. The case of *Brune* v. *Marriott* was carried to the supreme court by writ of error. Pending the appeal in the Brune suit—independently of it, and after the refusal of the secretary of the treasury to acquiesce in it, and his announced determination not to acquiesce in it, even if affirmed by the supreme court—Douglass and Ogden, in prosecution of their contract with the defendants, procured a suit to be instituted and prosecuted in such manner as to secure a decision upon the principle involved, on all the points taken by the secretary of the treasury. This was the suit of *The United States* v. *Southmayd,* brought in the southern district of New York, and was the only suit in which the "principle involved" was presented. By the efforts of Douglass and Ogden and their counsel, the case of *United States* v. *Southmayd* was expedited, tried, and after a verdict for the defendant, a writ of error taken, and the cause placed on the calendar of the supreme court, a preference given to it, and the cause argued, all between October, 1849, and May, 1850. The plaintiff had no connection with the last mentioned suit or any proceedings therein. Had it not been for these special efforts, the case would not have been reached, in the ordinary course, for two years. It was 250 on the calendar. The Brune case was 207. After the above arrangement, and after the day for arguing the case of Southmayd out of its order had been fixed, the plaintiff and Brune's counsel applied to have the Brune cause heard at the same time, and it was consented to. The cases were argued together, not consecutively. The Southmayd case alone involved all the points raised by the secretary of the treasury. The decision of the supreme court, in both suits adverse to the government, was rendered May 29, 1850. Secretary Meredith on the 5th of July, 1850, issued a circular to collectors, &c., acquiescing in the decisions in these two suits, and adopting them as the rule of construction of the

department.  This circular would not have been issued but for the decision in the case of the *United States* v. *Southmayd.* Shortly after Mr. Meredith's acquiescence in such decision he retired from office, and Mr. Corwin was appointed in his place, in July, 1850.  Secretary Corwin issued a circular to collectors, &c., August 10, 1850, directing the refunding of the duties in question.  This was in pursuance of the above "decisions" and of secretary Meredith's "acquiescence" therein.  In the interval between the above decisions and issuing of the circulars of July 5, 1850, and August 10, 1850, repeated and continuous efforts were made by Douglass and Ogden and their counsel, to procure the issuing of said circulars, and the claims on which the decision to refund was made were the original claims of Thompson and Foulke, on which the comptroller had reported in April, 1849, and which were those represented and urged by Curtis.  The refunding was arrested in December, 1850, on a question as to tare, raised by the commissioner of customs. This question was argued by the counsel for Douglass and Ogden, and also by the plaintiff.  The decision made by Secretary Corwin, in favor of the importers, was the result of the argument and effort of Mr. Curtis.  After the refunding recommenced, the defendants' statements of their importations of sugar and molasses, on which they claimed return of duties, were made up, and the duties recovered ; the plaintiff had nothing to do with making up the statements, &c.  The defendants paid Douglass and Ogden in full, over $6000.  Douglass and Ogden paid over $20,000 for counsel fees and services to various parties, besides $18,000 or $20,000 received by Mr. Curtis.

The jury found a verdict for the plaintiff for $5153.25.

*C. P. Kirkland,* for the plaintiff.

*Wm. Allen Butler* and *F. B. Cutting,* for the defendants.

*By the Court,* ROOSEVELT, J.  Shortly after the passage of the new tariff act of 1846, a question arose in relation to the duties on molasses and sugars, whether in estimating the value

a deduction should be made for drainage on the voyage of importation. The officers of the customs, including the secretary of the treasury, took ground in opposition to the merchants. Mr. Ely, the plaintiff in this case, believing as he said that the merchants were overcharged, proposed " to recover, and cause any excess of duties, so paid to the government of the United States, to be refunded," upon receiving for his services and expenses "one half of the same," or, at the option of the claimants, a reasonable compensation to be afterwards agreed upon by the parties or " fixed by referees."

Messrs. Spofford & Tileston, among others, agreeing to Mr. Ely's proposal, accordingly signed a stipulation to that affect, writing opposite to their signature, however, at the same time, the words, " not to interfere with any other arrangement already made," a very loose form of expression it must be admitted, and calculated, as it has done, to give rise to very embarrassing litigation. It was sufficient, nevertheless, to put the party on inquiry. Indeed he knew, as appears, of the pre-existing employment of Messrs. Douglass and Ogden, who were then also actually engaged in the business, and whose influence and exertions, it is obvious, contributed largely to the result, and who had to be, and actually were, liberally remunerated. Mr. Ely, notwithstanding, claimed his fifty per cent with interest and without deduction ; and the jury, under the charge of the judge, gave him a verdict accordingly for $5153.25.

If this verdict stands Messrs. Spofford & Tileston, although successful in their controversy with the government, instead of realizing as was intended at least one net half of their claims, will in effect have paid the whole recovery in costs and commissions. And yet, by the terms of Mr. Ely's proposition and agreement, he was to save them harmless "from all costs and liabilities to costs," and to charge his commission only " on whatever sum or sums of money he might recover for them."

Without a more minute detail of the voluminous case presented to us, we are clearly of opinion that the judge was in error when he charged the jury that in fixing the defendants' liability,

they were "not to take into account the expenses paid to parties employed under the prior contract of February, 1848."

A new trial should therefore be ordered, costs to abide the event.

[NEW YORK GENERAL TERM, September 8, 1856. *Roosevelt, Clerke* and *Whiting,* Justices.]